MEYER v. McDILL.

Opinion delivered November 10, 1913.

1. COVENANTS—WARRANTY—BREACH.—A. owned a life estate in land, but gave a warranty deed to the same to B.; after A.'s death, the remainderman recovered possession of the land by a suit in ejectment. In an action by B. against the heirs at law of A. for a breach of the original covenants of warranty, *held*, there was a breach of warranty, and that B. might recover from the heirs of A., provided any property passed to the said heirs from A. (Page 151.)

2. COVENANTS—WARRANTY—BREACH—ACTION AGAINST HEIRS—LIEN.—In an action by the grantee against the heirs of the grantor, on account of a breach of covenants of warranty in the deed of conveyance, the grantee may recover when any land passed to the said heirs, where the proof shows definitely and certainly what land was inherited, without proof of the value thereof, and the grantee will be entitled to have a lien declared upon said lands for the amount which the court found he should recover, irrespective of the value of the said land. (Page 152.)

Appeal from Lincoln Chancery Court; *John M. Elliott*, Chancellor; affirmed.

*J. W. Crawford* and *T. M. Hooker*, for appellants.

*Creed Caldwell* and *E. W. Brockman*, for appellees.

SMITH, J. On the 14th of March, 1881, Matthew F. McDill sold and conveyed to Gabe Meyer a small tract of land in Jefferson County for the consideration of $1,-228.20. The deed undertook to convey the fee, and contained the usual covenants of warranty, but McDill held the land under a deed from his mother, which conveyed to him only a life estate, and upon his death in 1908, the remaindermen brought ejectment for the land against Meyer and his wife, and recovered its possession. Gabe Meyer held the land so conveyed to him until June 5, 1893, at which time, it, and about 1,300 acres of other land, was sold at a judicial sale to satisfy a judgment rendered against him in the Federal court, and at the sale, his wife, Bertha S. Meyer, became the purchaser for a consideration recited in the deed to her to be $3,700, but which was claimed, in fact, to have been $8,000.

After the termination of the ejectment suit, appel-

lants brought this action on the original warranty in Mc-
Dill's deed to Gabe Meyers, and prayed judgment for
the consideration paid for the land and the interest
thereon, with the costs of the litigation, and asked that it
be decreed a lien on certain land mentioned and described
in their complaint, which, it was alleged, appellees had
inherited from their father, Matthew F. McDill. Appel-
lees, in their answer, denied that the property set out in
the complaint had been owned by Matthew F. McDill, or
had been inherited by them from him.

A number of legal questions are presented in the
briefs, which we need not discuss in view of the chan-
cellor's findings of fact, and our own view of the evidence.
The court found that there was a breach of warranty, and
that appellants would be entitled to recover, provided
they could show that any property passed to appellees as
heirs at law of Matthew F. McDill, deceased, but denied
appellant's right to recover, because, as the court found,
"the only proof on that point is found in the deposition
of J. L. Conrad and E. F. McDill. The former testified
that while he was a justice of the peace, an uncle of his
sold a tract of land to M. F. McDill, for which the witness
drew the deed. That was probably in 1891, and the wit-
ness could not locate the tract. E. F. McDill, who is one
of the defendants, testified that Matthew F. McDill, at the
time of his death, owned about thirty acres of land, but
he could not describe it. He further testified that his
father left no personal estate, and there was no adminis-
tration. There is absolutely no testimony locating the
thirty acres of land owned by Matthew F. McDill, and
nothing to show its value, even though it should be con-
ceded that the description of the land may be dispensed
with."

The chancellor declared the law to be that there
could be no recovery because of the failure to prove the
value of the land inherited by appellees from their
father. We do not concur in this view. Had the proof
shown definitely and certainly what land, if any, appel-
lees had inherited from their father, then appellants

would have been entitled to have a lien declared against such land for the amount which the court found they should recover, and this lien ordered enforced against the inheritance, whether its value was more or less than the amount of the recovery.

The lands upon which appellants sought to enforce their lien was described in the complaint as "lots 1 and 2 in the south half of section 32, 54.81 acres;. north part of the northwest quarter of the southwest quarter of section 33, ten acres, in township 10 south, range 6 west." Appellants filed an amended complaint, alleging that the lots above described are parts of private surveys had by and for said Matthew F. McDill, and other heirs of their mother, Mrs. Cornelia F. McDonald. On behalf of appellants, a surveyor testified as to this private survey, and stated that McDill was living on the land prior to his death, and that once, when he was doing some surveying for a Mr. Pierce, an adjacent owner, there was some uncertainty how the lines should run, because of some accretions, and Pierce and McDill agreed upon the survey, and gave him directions how to make it. Witness was asked these questions:

Q. Do you know, then, of your own knowledge, whether the property McDill you say resided on in 1905 belonged to his wife, or not, do you?

A. Why, I never did take the trouble to hunt up the abstracts.

Q. All you know about the property was what he told you?

A. Yes, sir; he was standing there on the ground. He says if it suits Uncle Steve to run that line across the accretions, it suited him, and him and Pierce agreed to it right then.

Q. But you don't know whether the land he resided on at that time belonged to his wife, did you, or not?

A. No, sir; I don't know whether as I could say.

Witness further testified he found lot 1 in south half of section 32, township 6 south, range 6 west, assessed for taxes in the name of M. F. McDill, but that he and

Judge Palmer had searched the records, and had failed to find any deed to M. F. McDill, nor did they find a deed to any one conveying this lot 1. Later, at the request of Meyer, witness made a survey of the land, and furnished a description of lot 1 by metes and bounds, and it is only against this lot 1, which appellant now seeks to have his lien declared. Witness J. L. Conrad testified that he knew M. F. McDill in his lifetime, and that he lived on section 32 or 33 near the line. That about twenty years prior to the date of his testimony, he had prepared a deed from his uncle, A. P. Conrad, conveying the lands in question, but that he could not then remember whether the deed was to M. F. McDill or to his wife, or to him and his wife, and, upon his cross examination, it appeared that he was not certain even as to the land conveyed by this deed. E. F. McDill, one of the sons of M. F. McDill, was also examined, and while a study of his evidence leaves the impression that he might have clarified the situation to some extent, the fact remains that he did not avail himself of the opportunity to do so.

Upon the whole case, we think the chancellor's finding that the proof does not show, with sufficient certainty, what, if any, lands, appellees inherited from their ancestor, is not contrary to the preponderance of the evidence, and the decree is therefore affirmed.